# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TOKYO GATSON,<br><br>*Plaintiff,*<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>*Defendant.* | Civil Action No. 15-5068<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I.  INTRODUCTION

This matter comes before the Court by way of Plaintiff Tokyo Gatson ("Gatson" or "Plaintiff") and Defendant the Federal Bureau of Investigation's (the "FBI" or the "Government" or "Defendant") cross-motions for summary judgment. D.E. 28 & 30. The Court considered the written submissions of the parties[1] and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Defendant's motion for summary judgment is granted, and Plaintiff's motion is denied.[2]

---

[1] Defendant's brief in support of its motion for summary judgment (D.E. 28) will be referred to as "Def. Br." Plaintiffs brief in support of its motion for summary judgment (D.E. 31) will be referred to as "Pl. Br." In a letter to the Court, Plaintiff clarified that his brief in opposition to Defendant's motion is the same brief that Plaintiff filed in support of his motion for summary judgment. D.E. 50. Therefore, the Court will consider Plaintiff's sole brief for those dual purposes. In light of Plaintiff's filing of only one brief, Defendants informed the Court that its brief in opposition to Plaintiff's motion for summary judgment (D.E. 40 ("Def. Opp.")) would also serve as its reply brief in further support of its motion for summary judgment, (D.E. 51).

[2] After filing his motion for summary judgment, Plaintiff filed two motions seeking to take discovery in this matter. D.E. 33 & 34. In its opposition brief, the Government opposed these

## II. FACTS[3] AND PROCEDURAL HISTORY

### A. Plaintiff's Record Requests

This matter concerns *pro se* Plaintiff's request to the FBI[4] pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, for certain records and documents relating to himself,

thirteen FBI Special Agents, Plaintiff's prison cellmates, and the "James Bond Gang." Declaration

of Tokyo Gatson ("Gatson Decl.") ¶ 1. In particular, on February 11, 2015, Plaintiff requested:

> • Copies of any and all files, FBI teletype, "field notes," T.R.A.K
> Messages, correspondence, memoranda, E-mails, Text, faxes, and
> other records, whether paper or electronic or otherwise which,
> directly or indirectly, report upon, concern, reference or refer to the
> Requestor Mr. Tokyo Daniel Gatson between November 5, 2012
> through February 11, 2015.
>
> • Copies of any and all documents, correspondence, T.R.A.K
> Messages, memoranda, E-mails, Text, faxes, and other records,
> whether paper or electronic or otherwise which reflecting
> communications between any government agency or official

---

motions. In a letter order, the Court denied Plaintiff's discovery motions. D.E. 42. Therefore, the discovery motions are not addressed in this Opinion.

[3] The facts of this matter derive from Defendant's statement of undisputed material facts and Plaintiff's declaration. Contrary to Local R. of Civ. P. 56.1, Plaintiff did not file his own statement of undisputed material facts or respond to Defendant's statement. This procedural defect results in the Court accepting Defendant's statement of facts as true. *See Friedman v. Bank of Am., N.A.*, No. 09–2214, 2012 WL 1019220, at *6 n.2 (D.N.J. Mar. 26, 2012) ("[T]he court will consider any statement of fact which was not denied by the Plaintiffs with a citation to the record as undisputed for the purposes of this motion for summary judgment."). However, because Plaintiff is proceeding *pro se* and did include his version of the facts in a declaration, D.E. 31, the Court considered Plaintiff's factual contentions. Plaintiff's factual averments do not change the Court's analysis.

[4] Defendant argues that in a Freedom of Information Act case, the only proper defendant is a federal agency as opposed to an agency component. Therefore, Defendant asks that the Department of Justice ("DOJ") be substituted as defendant for the FBI. The issue of whether the FBI may be the sole defendant in a FOIA case is not settled. *Ginarte v. Mueller*, 534 F. Supp. 2d 135, 137 n.4 (D.D.C. 2008) (noting that there is "disagreement . . . about whether the FBI, and like agency components, are subject to FOIA in their own names"). However, "the weight of authority is that subcomponents of federal executive departments may, at least in some cases, be properly named as FOIA defendants." *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 101 (D.D.C. 2012). Therefore, the FBI will remain as named defendant in this case.

directly or indirectly, report upon, concern, reference or refer to the Requestor Mr. Tokyo Daniel Gatson between November 5, 2012 through February 11, 2015.

• Copies of any and all documents, correspondence, T.R.A.K Messages, memoranda, E-mails, Text, faxes, and other records, whether paper or electronic or otherwise which reflecting communications between any Bergen County Prosecutor or official directly or indirectly, report upon, concern, reference or refer to the Requestor Mr. Tokyo Daniel Gatson between November 5, 2012 through February 11, 2015.

• Copies of any and all records[,] documents, memoranda, correspondence[,] E-mails, Text, faxes, and other records, whether paper or electronic or otherwise which pertain to any disciplinary matters that may have involved the following Special Agents: SA Benjamin E. Mininger; SA Jordan Bensen; SA Carlos Morales; SA Ryan Alexander Guerra; SA Gregory Donovan; SA Paul Szabo; SA Kurt Limpert; SA Buddy Early; SA Douglas Dye; SA Ruben Marchand; SA Mason Gant; SA Joshua Thompson; SA Cory Cloud; and

• Copies of any and all records regarding any remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future unauthorized practice of law by the following Special Agents: SA Benjamin E. Mininger; SA Jordan Bensen; SA Carlos Morales; SA Ryan Alexander Guerra; SA Gregory Donovan; SA Paul Szabo; SA Kurt Limpert; SA Buddy Early; SA Douglas Dye; SA Ruben Marchand; SA Mason Gant; SA Joshua Thompson; SA Cory Cloud; and

• Copies of any and all documents, correspondence, memoranda, E-mails, Text, faxes, and other records, whether paper or electronic "which contain any debriefing/proffer statements made/given by Requestor Mr. Tokyo Gatson's Cellmates between October 11, 2013 through February 11, 2015.

• Copies of any and all files, FBI teletype, "field notes," correspondence, T.R.A.K Messages, memoranda, E-mails, Text, faxes, and other records, whether paper or electronic or otherwise which, directly or indirectly, report upon, concern, reference or refer to the Bergen County "James Bond Gang" between November 5, 2012 through February 11, 2015.

*Id.*

Plaintiff was also a defendant in another matter in this District. *United States v. Gatson, et al.*, Crim. No. 13-705. That case was presided over by Judge Martini. Plaintiff was indicted, found guilty in November 2015 following a multi-week jury trial, and sentenced in 2016. It appears that Plaintiff's FOIA requests related, at least in part, to the underlying criminal investigation and/or prosecution. To be clear, Plaintiff's FOIA request is reviewed pursuant to different legal standards than those relating to discovery in Plaintiff's criminal case. To the extent Plaintiff had concerns with the discovery produced in his criminal prosecution, such issues needed to be raised with Judge Martini.

Defendants located approximately 1,750 pages of records responsive to Plaintiff's requests. Defendant's undisputed statement of material facts ("DSOF") (D.E. 28-5) ¶ 15. After reviewing these records, Defendants determined that multiple exemptions under FOIA and one exemption under the Privacy Act, 5 U.S.C. § 552a, warranted withholding many of the documents from production. Defendants ultimately produced 163 pages in full and 6 pages in redacted form in response to Plaintiff's FOIA request. *Id.* ¶¶ 19-21. Plaintiff filed a complaint challenging Defendant's withholding of the remaining documents.

### B. The FBI's Record Keeping Systems

The FBI uses an extensive system of record keeping known as the Central Records System ("CRS"). DSOF ¶ 24. The CRS consists of "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its" duties. *Id.* The CRS spans the entire FBI and includes the records of FBI headquarters, FBI field offices, and FBI legal attaché offices throughout the world. *Id.* Records in the CRS are categorized according to a variety of subject matters, such as individual (persons), organization, and event (*e.g.*, terrorist attack or bank robbery). *Id.* ¶ 27. Information within CRS is indexed as

either a "main entry" or a "reference entry." *Id.* ¶ 26. A main entry pertains to records indexed according to the primary subject of a file, such as a particular individual or organization. *Id.* A reference entry is a cross-reference to a record that merely mentions an individual, organization, or other subject matter contained within a "main entry." *Id.* The FBI does not index every individual, event, or subject matter in the CRS, but rather only information that is considered relevant and necessary for future retrieval. *Id.* ¶¶ 26-27.

The FBI's Automated Case Support System ("ACS") is an electronic, integrated case management system that became effective in 1995. *Id.* ¶ 28. As a result, over 105 million CRS records were converted from prior systems into ACS. *Id.* The FBI's Universal Index application ("UNI") is an automated index of the CRS that permits file retrieval by way of index searching. *Id.* ¶ 29. Individual names are recorded with identifying information such as date of birth, race, sex, locality, Social Security number, address, and/or date of an event. *Id.* Currently, UNI consists of approximately 112.5 million searchable records and is updated daily with newly indexed material. *Id.*

Effective July 1, 2012, the FBI implemented "Sentinel," its "next-generation case management system" that provides a "web-based interface to its users" with the "same automated application that is utilized in ACS." *Id.* ¶ 30. Sentinel did not replace ACS, but rather works conjunctively through an "index data sharing nexus . . . whereby information indexed into Sentinel is replicated or 'backfired' into ACS. *Id.* In other words, Sentinel builds on ACS and shares its operational purpose by providing another portal to locate FBI records within the CRS. *Id.*

### C. The FBI's Search Terms and Methods

Upon receipt of Gatson's request, the FBI assigned the request two different request numbers with one called the "James Bond Gang" request (FOPIA Request Number 1322161-000)

and the other named the "Tokyo Gatson" request (FOIPA Request Number 1322150-000). The FBI's Record/Information Dissemination Section conducted a CRS index search for responsive records employing the UNI application of ACS and a Sentinel index search by using the following search terms: "James Bond Gang" and "Tokyo Gatson," along with nine aliases found during the search -- "Tokoyo," "Christopher Wright," "Daniel Gatson," "Daniel Tokyo Gatson," "Tokyo D. Gatson," "Akeem Boone," Jarrell Bordeaux," "Jerry Montgomery," and "Marc Rainey." *Id.* ¶ 32. The FBI's search included a three-way phonetic breakdown of "Tokyo Gatson," a string search for "James Bond Gang," and an on-the-nose search for the eight aliases.[5]  *Id.*  The FBI used Gatson's date of birth and other identifying information to facilitate the identification of responsive records.  *Id.*  After conducting the search, the FBI identified only cross-reference records indexed to the James Bond Gang and both main and cross-reference records indexed to Gatson's name.  *Id.*

The FBI identified 169 pages of responsive records that it determined were not exempt under any FOIA exemption.  The FBI released to Gatson 163 pages in full and 6 pages in redacted form.

### D.  Procedural History

Plaintiff filed a one-count Complaint alleging that Defendant improperly withheld outstanding documents located during its FOIA search.  At the time Defendant filed its motion for

---

[5] Defendant explained that a three-way phonetic search is conducted on a computer through ACS by first breaking a "name down and search[ing] the index for three different breakdowns." Declaration of David M. Hardy ¶ 36 n.6 (D.E. 28-7).  Next, "the computer breaks names down based on their phonetic characteristics." *Id.*  The computer's results are "based on whether or not they phonetically match a certain percentage of the first and last name searched." *Id.*

A string search is defined as a "search of all names whose starting characters match the characters typed into the name field. *Id.* ¶ 36 n.7.  This "search will automatically capture variations of the names searched." *Id.*

An on-the-nose search consists only of the exact name entered into the search field. *Id.* ¶ 36 n.8.

summary judgment, Plaintiff was incarcerated in the Essex County Correctional Facility in Newark, New Jersey. Declaration of David M. Hardy ("Hardy Decl.") ¶ 6 (D.E. 28-7). Also at the time this motion was filed, Plaintiff had already been convicted by a jury in the matter before Judge Martini, as referenced above. Plaintiff was convicted of federal crimes relating to conspiracy to transport stolen property in interstate commerce and interstate transportation of stolen property. *Id.* Judge Martini thereafter sentenced Plaintiff to 300 months imprisonment. Docket No. 2:13-00705 at D.E. 159. On July 11, 2016, Plaintiff filed a notice of appeal. *Id.* at D.E. 162. As of the date of this Opinion, Plaintiff's appeal is still pending.[6]

## III. LAW AND ANALYSIS

### A. Standard of Review

In a FOIA case, like all other civil matters, "[s]ummary judgment may be granted only if the movant shows that 'there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party'" and the movant is entitled to judgment as a matter of law. *Berger v. I.R.S.*, 487 F. Supp. 2d 482, 492 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir. 2008) (quoting *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988)). A fact is "material" when a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at

---

[6] Plaintiff's appeal is pending under docket number 16-3135. The Court takes judicial notice of the fact that this appeal remains pending. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999) (noting that a court may take judicial notice of the existence of other court proceedings).

248). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "When analyzing the sufficiency of the evidence, the court must view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992)).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under those circumstances, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. However, to withstand a motion for summary judgment, the nonmoving party need only "come forward with evidence which, if believed, would support a finding in its favor." *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003).

A motion for summary judgment is typically used to adjudicate FOIA cases. *Manna v. U.S. Dep't of Justice*, 832 F. Supp. 866, 870 (D.N.J. 1993), *aff'd*, 51 F.3d 1158 (3d Cir. 1995). "[A] district court may award summary judgment on the basis of agency affidavits alone where the affidavits are sufficiently detailed and are submitted in good faith." *Id.* Agency affidavits are generally "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Venkataram v. Office of Info. Policy*, No. 09-6520, 2013 WL 3871730, at *3 (D.N.J. July 25, 2013). "[A]n agency is entitled to summary judgment if its affidavits describe the withheld information and the justification for

withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Am. Friends Serv. Comm. v. Dep't of Def. through Def. Logistics Agency,* 831 F.2d 441, 444 (3d Cir. 1987) (internal citation and quotation marks omitted). The agency's decision to withhold information is reviewed *de novo* and "the burden is on the agency to justify its action." *Manna,* 832 F. Supp. at 870 (D.N.J. 1993).

### B. FOIA Overview

FOIA provides that a government "agency shall make available to the public" certain information specified in the statute. 5 U.S.C. § 552. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978). "Under FOIA, a government agency must promptly release agency documents, upon request, subject to nine specific statutory exemptions." *Manna,* 832 F. Supp. at 870. If an exemption does not apply, the record must be released to the person requesting it. *Lame v. U.S. Dep't of Justice,* 654 F.2d 917, 921 (3d Cir.1981). Should an exemption apply to only a portion of a record, then "[a]ny reasonably segregable, non-exempt portion of a record is to be made available to the person requesting that record." *Id.* "If the agency has failed to release the requested information, and administrative appeals have been exhausted, the individual seeking disclosure can obtain review of the agency's denial in a federal district court." *Id.*

### C. The *Vaughn* Index

"The review of FOIA cases 'is made difficult by the fact that the party seeking disclosure does not know the contents of the information sought and is, therefore, helpless to contradict the

government's description of the information or effectively assist the trial judge.'" *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995) (quoting *Ferri v. Bell*, 645 F.2d 1213, 1222 (3d Cir. 1981)). To combat this difficulty, the government prepares a "'Vaughn' index, identifying each document withheld, the statutory exemption claimed, and a particularized description of how each document withheld falls within a statutory exemption." *Id.* Importantly, however, a document-by-document *Vaughn* index is not always necessary. "[A]n agency may submit a *Vaughn* Index that describes documents by category when a document-by-document index would reveal the very information the agency seeks to protect." *Qatanani v. Dep't of Justice*, No. 12-4042, 2015 WL 1472227, at *12 (D.N.J. Mar. 31, 2015).

Here, Plaintiff argues that the fifty-six page declaration of David M. Hardy[7] is an insufficient *Vaughn* index in describing the bases for not producing the 1750 withheld documents. Plaintiff concedes that agency affidavits in FOIA cases "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Pl. Br. at 3 (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). However, Plaintiff then speculates that he "believes" that Defendant has not complied with their FOIA obligations. Plaintiff maintains that Mr. Hardy does not "list or describe the responsive documents at issue" nor does he provide any information on "how the exemptions relate to the nature of the documents themselves." Pl. Br. at 6. The Court disagrees.

---

[7] Mr. Hardy is the Section Chief of the Record/Information Dissemination Section, Records Management Division for the FBI. Hardy Decl. ¶ 1. Mr. Hardy's declaration also attaches 16 exhibits (Exhibits A – P) concerning Plaintiff's FOIA request and the FBI's correspondence with Plaintiff concerning the status of his request. As discussed, the FBI divided Plaintiff's request and assigned it two different FOPIA request numbers, once concerning the James Bond Gang and the other addressing Tokyo Gatson. Although the FBI referred to the different names and numbers in its correspondence with Plaintiff, Plaintiff did not appear to realize that the FBI had assigned two different numbers and titles to his request.

Mr. Hardy explains that the withheld documents relate to ongoing criminal investigations and prosecutions (including of Gatson himself whose appeal remains pending) and that providing a document-by-document description of these records would undermine the Government's interests in maintaining the confidentiality of documents pertaining to currently pending investigations and prosecutions. Hardy Decl. ¶¶ 50, 54. Mr. Hardy named twelve different categories that comprised the withheld documents.[8] He then provides a description of each category. *Id.* ¶ 54. Mr. Hardy also attests that the FBI divided the documents into evidentiary, investigative, and administrative materials; describes the kinds of information contained in each category; and explains the harms that could arise from disclosure. *Id.* ¶¶ 57-69. Mr. Hardy indicates that the FBI reviewed records to identify reasonably segregable information that would not jeopardize any ongoing or future enforcement proceedings, which resulted in the 169 pages of non-exempt documents being released to Plaintiff. *Id.* ¶¶ 55, 68.

As noted, other than Plaintiff's "belief," he fails to provide any concrete reasons as to why Mr. Hardy's declaration is insufficient. The Court finds that the categorical description is appropriate in this matter and that the Hardy declaration is a sufficiently detailed *Vaughn* index of the categories of withheld documents. *See Qatanani*, 2015 WL 1472227, at *12.

### D. Adequacy of the Search

When searching for documents pursuant to a FOIA request, the adequacy of the government's search is not measured by the documents that are actually uncovered, but rather

---

[8] The twelve categories of documents are: (1) FD-302 form for reporting information that may be subject of testimony, (2) FD-340, 1A envelope, (3) FD-395, advice of rights form, (4) FD-597 receipt of property form, (5) FD-999, liaison with external organizations form, (6) FD-1036 import form, (7) F-1036, electronic communication, (8) FD-1087, evidence and Sentinel data log form, (9) OBD 277 form, (10) court documents, (11) miscellaneous administrative documents, and (12) other investigative documents. Hardy Decl. ¶ 54.

whether the search was "reasonably calculated to uncover all relevant documents." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). In other words, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Qatanani*, 2015 WL 1472227, at *7 (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). Therefore, an agency's search is sufficient when it provides a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched." *Abdelfattah*, 488 F.3d at 182 (internal quotation marks omitted).

In this case, Plaintiff argues that the Government "provided custodians with vague search instructions" and the custodians' search terms were inadequate or they did not specify which terms they used in their search. Pl. Br. at 8. Plaintiff also claims that the FBI did not disclose the timeframe in which it conducted the search. *Id.* at 9. In regard to the method used, Plaintiff criticizes the Government for conducting a search where "much (but not all) of it was 'manual.'" *Id.* Finally, Plaintiff argues that "most custodians cannot be 'trusted' to run effective searches because designing legally sufficient electronic searches the discovery or FOIA contexts is not part of their daily responsibilities." *Id.* at 10. The Court finds that each of these contentions are without merit.

The FBI's search terms and methodology were sufficient. The FBI conducted a three-way phonetic breakdown search of "Tokyo Gatson," a string search for "James Bond Gang,"[9] and an

---

[9] In his declaration, Plaintiff certifies that "at no time has the Plaintiff Mr. Tokyo Gatson indicate[d] in his request anything about 'the James Bond Gang.'" Gatson Decl. ¶ 3 (emphasis omitted). Plaintiff states that "[t]o change the [s]ubject matter from 'Mr. Tokyo Gatson' to 'James Bond Gang' shows Mr. David M. Hardy, obviously, found some records responsive to the Plaintiff Mr. Tokyo Gatson['s] request." *Id.* ¶ 4 (emphasis omitted). This, however, simply is not the case

on-the-nose search for nine of Plaintiff's suspected aliases. Hardy Decl. ¶ 36. The FBI also used Plaintiff's date of birth and other identifying information to facilitate the identification of responsive records. Although Plaintiff claims that the FBI could have included additional search terms of "names or things" connected to Plaintiff, the relevant inquiry is not whether the Government conducted the most expansive search possible or a perfect search. Instead, the question is whether the FBI's search terms were reasonably calculated to uncover documents responsive to Plaintiff's request. The search terms employed by the government satisfy this burden. Indeed, the variations used in searching Plaintiff's name and the James Bond Gang, as well as searching nine of his suspected aliases demonstrate that the scope of the FBI's search was broader in scope than what Plaintiff asked for in his request. Plaintiff provides no basis as to support his claim that FBI custodians could not run an effective search using these particular terms. Accordingly, Plaintiff's argument that the search terms were inadequate or unspecified is without any support in the record.

Additionally, the FBI searched for records pertaining to the time period that Plaintiff specified in *his* request. Therefore, Plaintiff may not logically argue that the timeframes searched were unknown.

Finally, contrary to Plaintiff's contentions, the FBI did not conduct a manual search of its records, but rather conducted an electronic search of its CRS files. Therefore, Plaintiff's argument that the FBI conducted an improper manual search is unsupported by the record.

---

and is belied by Plaintiff's own affidavit. The FBI conducted a search in response to Plaintiff's FOIA request, which asked for information pertaining to both Gatson himself as well as the James Bond Gang. *See id.* ¶ 1; Hardy Decl. ¶ 32. The FBI then provided Plaintiff with the responsive documents that it concluded that not fall into any of FOIA's exemptions. Therefore, Plaintiff's argument is without merit and is expressly contradicted by wording of his FOIA request.

For these reasons, the Court concludes that the search terms and methodology used were sufficient.

### E. FOIA Exemptions

Defendant argues that it properly withheld documents in response to Plaintiff's FOIA request pursuant to seven FOIA exemptions. Plaintiff argues that Defendant improperly invoked each of the exemptions.[10] The Court disagrees and concludes that Defendant properly withheld documents pursuant to each of the FOIA exemptions[11] asserted by Defendant.[12]

#### i. **Exemption 7 Threshold**

5 U.S.C. § 552(b)(7) permits the government to withhold "records or information compiled for law enforcement purposes" where the release of these records would result in one of

---

[10] Plaintiff also makes arguments concerning issues that were not raised by Defendant. First, Plaintiff claims that the FBI improperly withheld documents that were referred to another agency for "consultation" to determine whether an exemption applies. Pl. Br. at 8. Defendant, however, did not indicate that it referred any documents to another agency for this purpose. Additionally, Plaintiff contends that the Government cannot make a blanket statement that exempt information is so inextricably intertwined with non-exempt material that the non-exempt material must be withheld. Pl. Br. at 4. The FBI did not raise this argument. The Court finds Plaintiff's arguments to be without merit and not based on the facts presented by Defendant.

[11] Although Plaintiff made his request pursuant to FOIA, Defendant first considered the request pursuant to the Privacy Act. The Privacy Act generally allows a person to have a right to access government records about him or herself, unless a Privacy Act exemption applies. 5 U.S.C. § 552a(d). Exemption (j)(2) permits an agency to promulgate rules regarding the non-disclosure of system records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals." 5 U.S.C. § 552a(j)(2). Under this exemption, the Department of Justice promulgated a rule exempting from disclosure law enforcement records maintained in the FBI's CRS. 28 C.F.R. § 16.96(a)(1). Here, the FBI withheld records that were part of its CRS and were created due to the FBI's criminal investigation into interstate transportation of stolen property. Hardy Decl. ¶ 40. The Court finds that Defendant properly applied Exemption (j)(2).

[12] The Court also conducted an *in camera* review of an *ex parte* declaration from Defendant, and the Court finds that the contents of the declaration to be unrelated to any issue raised by Plaintiff concerning the government's FOIA production.

six specified harms. Thus, a threshold requirement under Exemption 7 is that the withheld records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Here, Mr. Hardy certified that the documents requested fall under the FBI's law enforcement purposes because they were amassed during the Government's criminal investigation of Gatson and his accomplices. Hardy Decl. ¶ 43. Investigation of crimes is undoubtedly a law enforcement purpose. *See Baez v. F.B.I.*, 443 F. Supp. 2d 717, 724 (E.D. Pa. 2006) (concluding that "there is no question" that "records pertain[ing] to the investigation of crimes" are "compiled for law enforcement purposes"). There is no dispute that Plaintiff was investigated and prosecuted. Therefore, the preliminary requirement of Exemption 7 is satisfied.

### ii. **Exemption 7(A)**

Exemption 7(A) authorizes non-disclosure of records where release of such information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995). "A pending appeal of a criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes of Exemption 7(A)." *Kidder v. F.B.I.*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007).

Here, the Government properly invoked Exemption 7(A). At the time of Gatson's FOIA request, a criminal prosecution was pending in the District of New Jersey for federal crimes relating to interstate transportation of stolen property. As of the date of this Opinion, Gatson's appeal of his conviction remains pending. Therefore, at all relevant times, law enforcement proceedings have been pending against Plaintiff himself.

Additionally, the release of the requested records could be reasonably expected to cause articulable harm. The FBI provided numerous reasons why disclosure of the requested documents would interfere with the pending prosecution and potential prosecutions, including but not limited to, (1) the identification of law enforcement personnel and witnesses who could be targeted for potential intimidation or physical harm, and (2) the improper use of evidence uncovered by the government, including the alteration or destruction of evidence or the creation false evidence. Defendant also states that the release of records exchanged between the FBI and other law enforcement agencies could harm pending proceedings by revealing the scope, focus, and targets of those investigations, thereby permitting suspects to potentially destroy evidence or alter their behavior. Finally, Defendant notes that the release of certain records could reveal confidential law enforcement sources. *Id.* ¶¶ 56, 60, 61. For these reasons, the Court concludes the Government properly invoked Exception 7(A).

### iii. **Exemption 3**

According to 5 U.S.C. § 552(b)(3) ("Exemption 3"), a government agency may withhold records that are "specifically exempted from disclosure by statute" other than FOIA, if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." Additionally, if the statute was "enacted after the date of enactment of the OPEN FOIA Act of 2009, [it must] specifically cite[] to this paragraph." *Id.* "Exemption 3 differs from the other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents." *McDonnell v. United States*, 4 F.3d 1227, 1246 (3d Cir. 1993). Rather, "the sole issues for decision in determining the applicability of Exemption 3 to a particular set of documents are the existence of either type of relevant statute and the inclusion of withheld

material within the statute's coverage." *Id.* Here, the Government asserted Exemption 3 in connection with five statutes: Federal Rule of Criminal Procedure 6(e) (grand jury materials); 31 U.S.C. § 5311 (the Bank Secrecy Act "BSA"); 18 U.S.C. §§ 2510-2520 ("Title III"); 18 U.S.C. § 3123 (the "Pen Register Statute"); and 18 U.S.C. § 3509 (the "Child Victims' and Child Witnesses' Rights Act").[13] Each exemption will be addressed in turn.

### 1. Grand Jury Materials

Federal Rule of Criminal Procedure 6(e) exempts information from disclosure under FOIA when the "material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors." *Hodge v. F.B.I.*, 703 F.3d 575, 580 (D.C. Cir. 2013) (internal quotation marks omitted); *see also Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015) (explaining that "although a rule [such as Rule 6(e)] is not generally considered to be a statute, it qualifies as one under FOIA because the Congress has enacted it into positive law").

Here, the FBI properly withheld grand jury materials pursuant to Exemption 3. The FBI withheld records containing names of witnesses and prospective witnesses who were called to testify to the grand jury; the names of companies and their employees who were served with subpoenas to testify; documents identifying records subpoenaed by the grand jury; and other internal workings of the grand jury. Hardy Decl. ¶ 72. These are the precise types of grand jury records that fall under Rule 6(e) and Exemption 3. Therefore, the FBI properly withheld these documents.

---

[13] All five of these statutes were enacted prior to the OPEN FOIA Act of 2009. Hardy Decl. ¶¶ 72-73, 77, 79, 81.

## 2. Bank Secrecy Act

The BSA provides that "report[s] [created pursuant to the BSA] and records of reports are exempt from disclosure under [FOIA], and may not be disclosed under any State, local, tribal, or territorial 'freedom of information', 'open government', or similar law." 31 U.S.C. § 5319. The Financial Crimes Enforcement Network ("FinCEN")[14] has primary responsibility for implementing the provisions of the BSA. Hardy Decl. ¶ 73. In accordance with the plain language of the BSA, courts have recognized that the BSA qualifies as a withholding statute under Exemption 3. *See, e.g., Berger v. I.R.S.*, 487 F. Supp. 2d 482, 496 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir. 2008). In this case, the FBI withheld information obtained from FinCEN during the course of its criminal investigation activities. Hardy Decl. ¶ 76. These documents were obtained by FinCEN pursuant to the BSA and are statutorily exempt from disclosure. Therefore, the Court finds this information was properly withheld pursuant to Exemption 3.

## 3. Title III

Congress enacted the Omnibus Crime Control and Safe Streets Act of 1968, otherwise known as Title III, "to comprehensively and stringently regulate the interception of wire, oral and electronic communications." *Manna*, 815 F. Supp. at 810. Title III protects from disclosure records memorializing intercepted materials as well as "the applications made and the court orders granted for the interceptions." *Id.* at 811. "Title III has been held to fall squarely within the scope of Exemption 3." *Id.* Such information may not be disclosed except in three limited circumstances: (1) when disclosure is between law enforcement officers and "is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure," (2)

---

[14] FinCEN was established to "enhance U.S. national security, deter and detect criminal activity, and safeguard financial systems from abuse by promoting transparency in the U.S. and international financial systems. Hardy Decl. ¶ 73.

when use of such information is necessary for "proper performance of [the law enforcement officer's] official duties," or (3) persons testifying under oath.  18 U.S.C. § 2517(1)-(3).

In this case, the Government invoked Exemption 3 "to protect the request for assistance to support [Title] III wiretap and [Title] III communication analysis."  Hardy Decl. ¶ 78.  The three exceptions to non-disclosure do not apply here.  Therefore, the FBI properly invoked Exemption 3 to withhold these materials.

### 4.  Pen Register Statute

The Pen Register Statute[15] protects from disclosure information pertaining to certain court "order[s] authorizing or approving the installation and use of a pen register or a trap and trace device" and information pertaining to "the existence of the pen register or trap and trace device or the existence of the investigation."  18 U.S.C. § 3123(d).  Orders authorizing the use of pen registers must remain sealed unless otherwise ordered by the court.  *Id.*  Courts have concluded that the Pen Register Statute falls within the purview of Exemption 3.  *See, e.g., Labow v. U.S. Dep't of Justice*, 66 F. Supp. 3d 104, 120 (D.D.C. 2014), *rev'd on other grounds*, *Labow v. U.S. Dep't of Justice*, 831 F.3d 523 (D.C. Cir. 2016); *Sennett v. Dep't of Justice*, 962 F. Supp. 2d 270, 282 (D.D.C. 2013).

Here, the Government invoked Exemption 3 and the Pen Register Statute to withhold documents with information consisting of the identities and phone numbers of the individuals who are subjects of a pen register/trap and trace device, as well as court documents relating to its approval.  Hardy Decl. ¶ 80.  These documents fall under the Pen Register Statute's purview and were therefore properly withheld by the FBI.  Additionally, the FBI was correct to withhold any

---

[15] A pen register is a device that records phone numbers dialed to or from a target telephone. Hardy Decl. ¶ 79.

sealed court order prohibiting disclosure of documents relating to the installation of a pen register or a trap and trace device. *See Morgan v. U.S. Department of Justice*, 923 F.2d 195 (D.C. Cir. 1991).

### 5. Child Victims' and Child Witnesses' Act

The Child Victims' and Witnesses' Act requires certain information about abused children or children who witnessed a crime to be kept in a secure place, and only be released to certain persons authorized to participate in the proceedings. 18 U.S.C. § 3509(d)(1). The statute "qualifies as an Exemption 3 withholding statute." *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 237 (D.D.C. 2014). In this case, the FBI asserted Exemption 3 to protect the names and other identifying information of children who were included in records concerning residential burglaries. Therefore, these documents were properly withheld.

### iv. Exemption 5

Exemption 5 prohibits the disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency. 5 U.S.C. § 552(b)(5). These documents "include the privilege for attorney work-product and what is sometimes called the 'deliberative process' privilege. Work product protects mental processes of the attorney, while deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted). The rationale of the deliberative process privilege is "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) (quoting *First*

*Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C.Cir.1994)). The deliberative process privilege requires that a document is both "predecisional" and "deliberative." *Abdelfattah*, 488 F.3d at 183. "A document is predecisional if it was drafted to aid a decision maker in reaching his or her decision, and it is deliberative if it reflects the give[]-and-take of the consultative process." *Qatanani*, No. 12-4042, 2015 WL 1472227, at *8 (internal quotation marks omitted). "The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Here, the FBI properly withheld the Newark Field Office's draft e-discovery request for FBI Headquarters and the proposed strategy and discussion of progress regarding the arrest of persons connected with a Greenwich, Connecticut burglary. As to the deliberative process privilege, these documents are predecisional because they were created before a final decision was made as to which electronic documents would be requested or how arrests would take place. Harvey Decl. ¶ 86. The documents are deliberative because they contain the opinions, conclusions, and recommendations of FBI personnel. *Id.* If these documents were released, FBI personnel could in the future reasonably hesitate to offer their honest and frank opinions to superiors and coworkers knowing that their opinions could become a matter of public record. *Id. see also Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 940 (6th Cir. 1988) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)) ("[T]he key question in Exemption 5 cases is whether disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions."). Therefore, the FBI properly invoked the deliberative process privilege under Exemption 5.

The Government also properly withheld the draft e-discovery request pursuant to the attorney work-product privilege. The documents were prepared by a Newark Field Office Special Agent at the request of an FBI attorney in regard to the criminal matter pending against Gatson and his co-defendants. *Id.* ¶ 87. Therefore, the FBI appropriately withheld these documents under Exemption 5.

### v. Exemptions 6 and 7(C)

The Government asserts that it properly withheld eight categories of documents pursuant to Exemptions 6 and 7(C). These categories are identifying information regarding (1) FBI Special Agents and support personnel; (2) local law enforcement personnel; (3) third parties who provided information to the FBI; (4) third parties merely mentioned in FBI records; (5) third parties of investigative interest; (6) non-FBI federal, state and local government employees; (7) third-party victims; and (8) commercial institution personnel. Hardy Decl. ¶¶ 46-48, 88-94. The documents include information about people who were interviewed and/or provided information to the FBI during the course of its investigation of Plaintiff. Exemption 6 permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This "exemption requires the Court to balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) (internal quotation marks omitted). In conducting this balance, courts have found that individuals have a substantial interest in keeping personal information private, while comparatively, there is a negligible public interest in the release of such information. *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891, 899-904 (3d Cir. 1998). Notably, "the only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure

would serve the core purpose of the FOIA, which is contributing significantly to public understanding *of the operations or activities of the government.*" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (emphasis in original) (internal quotation marks and citations omitted). The release of names, addresses, and similar 'private' information reveals little, if anything, about the operations of the [government]." *Sheet Metal Workers Int'l Ass'n, Local Union No. 19*, 135 F.3d at 903.

Here, the privacy interest in non-disclosure outweighs the public interest in releasing the requested documents. The withheld records contain private information concerning government employees, third parties who provided information to the FBI, individuals whose information was referenced in the documents, and people of investigative interest. Gatson's request does not serve the public interest because the requested records do little or nothing to improve the public's understanding of agency operations. Conversely, there is a strong interest in not disclosing the private information of government employees, third parties, and victims.[16] Therefore, the FBI properly withheld these records under Exception 6.[17]

---

[16] Gatson requested disclosure of disciplinary matters and "remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future unauthorized practice of law" in regard to thirteen FBI Special Agents. Gatson Decl. ¶ 1. Mr. Hardy explained that "[i]t is the general practice of the FBI to require requesters to submit either a privacy waiver or proof of death or that they provide evidence of a significant public interest in disclosure prior to . . . [executing] any search for responsive third-party law enforcement records. Hardy Decl. ¶  Here, Gatson has done neither. Therefore, the FBI correctly withheld this information from disclosure. *See Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (concluding that under Exemption 7(C) FBI properly withheld documents requested about third parties when there was no proof of death, privacy waiver, or strong public interest that outweighed the individuals' privacy interests).

[17] Exemption 7(C) "provides greater protection from disclosure than exemption 6." *Sheet Metal Workers*, 135 F.3d at 898 (quoting *Sheet Metal Workers Int'l Ass'n, Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 996 (10th Cir. 1995)). Therefore, because the Court concludes that the Government properly invoked Exception 6, an analysis under Exemption 7(C) is unnecessary. *See Sheet Metal Workers Int'l Assn, Local No. 9*, 63 F.3d at 998–99 ("Because we hold that exemption 6 protects the information sought from disclosure, we need not address whether the more protective provisions of exemption 7(C) would also prevent disclosure of that information.").

### vi. **Exemption 7(D)**

Under 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)") provides that an agency may withhold law enforcement records if their release "could reasonably be expected to disclose the identity of a confidential source." "[A] source should be deemed confidential if it furnished information with the understanding that the government would not divulge the communication except to the extent the FBI thought necessary for law enforcement purposes." *McDonnell*, 4 F.3d 1227, 1259–60 (3d Cir. 1993). Additionally, "a source is confidential within the meaning of Exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Id.* at 1257.

Here, the FBI withheld records containing third parties who were both impliedly and expressly promised that their identities and the information provided concerning subjects of the FBI investigation would remain confidential. As to those who were impliedly promised, Mr. Hardy certified that the individuals provided information which, if disclosed, could expose them, as well as their families, to embarrassment, humiliation, and/or physical or mental harm. Hardy Decl. ¶ 101. Additionally, other confidential sources consented to a proffer agreement in exchange for an assurance that they would not be fully prosecuted. *Id.* ¶ 103. The Court finds that these sources would not have provided information to the FBI if they believed that their identities and the information provided would not remain confidential. Revealing such information could potentially cause them significant harm. Moreover, the individuals who provided information pursuant to an express promise of confidentiality clearly had an expectation that their identities and the information provided would remain confidential. Therefore, the Government properly invoked Exemption 7(D) to withhold records pertaining to these individuals.

### vii. **Exemption 7(E)**

Under 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), an agency may withhold law enforcement records if their release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." "An agency's burden in asserting Exemption 7(E) is relatively low because, rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Paco v. U.S. Customs & Border Prot.*, No. 14-5017, 2016 WL 344522, at *4 (D.N.J. Jan. 27, 2016) (internal quotation marks omitted). "Because the Exemption grants categorical protection to these materials, it requires no demonstration of harm or balancing of interests." *Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007) (internal quotation marks omitted).

Pursuant to Exemption 7(E), the FBI withheld twelve categories of records concerning its joint investigation with local law enforcement into interstate transportation of stolen property and residential burglaries in Montgomery County, Maryland; Howard County, Maryland; and Loudon County, Virginia. Hardy Decl. ¶ 53. These categories are: (1) sensitive case file numbers and subfile names; (2) the *modus operandi* gang members used to execute burglaries and the law enforcement technique pertaining to the analysis of the burglaries; (3) non-public database search results and the printouts compiled therefrom; (4) information concerning dates and types of investigations; (5) information concerning the installation, locations, monitoring, and types of devices utilized in surveillance; (6) a specific investigative technique and procedure relating to the BSA; (7) tactical information contained in operational plans; (8) the investigative focus of specific investigations; (9) operational directives concerning sensitive investigative techniques and

strategies; (10) internal FBI email, intellectual property, and intranet addresses; (11) collection and analysis of information; and (12) computer analysis response team reports and data. *Id.* ¶¶ 105-14. Each category will be addressed in turn.

First, the FBI properly invoked Exemption 7(E) to protect sensitive case file numbers. These case file numbers indicate the investigative interest in, or priority given to, certain matters. Hardy Decl. ¶ 52. Thus, the file numbers would reveal the priority that the FBI has placed on an investigation. For example, if the reader knows that it is a high priority case, he may cease or change his criminal activity. Conversely, if he knows that it is low priority, he may continue with the criminal activity. Either scenario would frustrate legitimate law enforcement investigations and goals. *See Shapiro v. U.S. Dep't of Justice*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015). Therefore, documents with this information were properly withheld in order to prevent the circumvention of law.

The FBI also correctly withheld documents containing the *modus operandi* that gang members used to carry out the burglaries that were under investigation, as well as the FBI's techniques used to analyze those burglaries. The FBI will likely use the same or similar detection methods or the future. Hardy Decl. ¶ 53. If disclosed, these documents would permit Gatson and his accomplices to change their activities and avoid detection in the future. *See McCoy v. Moschella*, No. 89-2155, 1991 WL 212208, at *5 (D.D.C. Sept. 30, 1991). Therefore, the FBI properly invoked Exemption 7(E).

Exemption 7(E) was properly invoked to withhold records containing non-public database search results and printouts compiled therefrom. The databases at issue allow law enforcement to search a large variety sources with state-of-the-art analytical tools to develop investigative leads. Hardy Decl. ¶ 105. If disclosed, this information could be used by criminals to avoid detection

26

of their illegal activities, and in turn, jeopardize the FBI's investigative mission. *Id.* Accordingly, the FBI correctly withheld this information. *See Paco*, 2016 WL 344522, at *6.

The FBI appropriately asserted Exemption 7(E) to withhold records containing information about the types and dates of investigations conducted by the Government. This information indicates whether an investigation is "full" or "preliminary," and the date the investigation was initiated. Hardy Decl. ¶ 106. If released, these records would allow targets to know what types of activities trigger a full investigation as opposed to a preliminary investigation. *Id.* With knowledge of this information, criminals could adjust their behavior to avoid investigations and detection of their illegal endeavors. *Id.* Therefore, Exemption 7(E) was appropriately invoked. *See Council on Am.-Islamic Relations, Cal. v. F.B.I.*, 749 F. Supp. 2d 1104, 1115–16 (S.D. Cal. 2010).

The next issue is whether the FBI properly withheld information regarding the targets, locations, monitoring, and types of devices utilized in surveilling Plaintiff and his accomplices. Release of this non-public information would reveal who, when, how, and under what situations the FBI conducts surveillance. Hardy Decl. ¶ 107. The surveillance techniques that were used in the investigation of Plaintiff are the same techniques utilized by the FBI in other pending investigations. *Id.* Therefore, the FBI correctly asserted Exemption 7(E) because disclosure of these techniques would allow suspects to become familiar with the FBI's surveillance methods and develop countermeasures to circumvent surveillance operations. *See Labow*, 66 F. Supp. 3d at 127-28.

In combination with Exemption 3, the Government asserted Exemption 7 to withhold certain procedures available under the BSA. Mr. Hardy certified that the withheld documents contained confidential information about particular techniques and/or procedures that if disclosed,

could provide a person with the necessary knowledge to alter his or her behavior to avoid law enforcement's detection of illegal activity. Hardy Decl. ¶ 108. The Court finds that these records were properly withheld.

The Government invoked Exemption 7(E) to protect the "blueprint" used in investigating interstate transportation of stolen property. According to Mr. Hardy, the blueprint "provides a complete overlay of the case being investigated, contemplated actions, and potential techniques to be used, personnel needed, and coordinating efforts." *Id.* ¶ 109. Mr. Hardy explained that the FBI will use the same or similar strategy contained in the blueprint when investigating future crimes of interstate transportation of stolen property. *Id.* Therefore, this information was properly withheld under Exemption 7(E). *See Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56, 90 (D.D.C. 2016).

The Government withheld records to keep confidential the focus of particular FBI investigations. Disclosure of the broader investigative focuses and how they are connected to other investigations would show the scope of the FBI's strategies in combatting crime. Hardy Decl. ¶ 110. Mr. Hardy explains that "[r]elease of this type of information would allow criminals to gauge the FBI's strengths and weaknesses within certain areas of the criminal arena and structure their activities in a manner that avoids detection and disruption by the FBI." *Id.* Mr. Hardy provides the example that if a person knew they were being targeted by virtue of the fact that they associated with a particular individual, then that person would likely disassociate with the individual in order to evade investigation. *Id.* The Court finds that release of this information would allow individuals to circumvent the law, and therefore the FBI properly invoked Exemption 7(E).

The next issue is whether the FBI correctly invoked Exemption 7(E) to withhold documents containing information about the Domestic Investigations and Operations Guide ("DIOG"). The

DIOG is known as the FBI's law enforcement and national security "playbook." *Id.* ¶ 111. It "instructs FBI employees on the proper use of certain sensitive FBI procedures, techniques, and strategies for conducting investigations." *Id.* Release of this information would provide individuals with an "inside look" of the FBI's confidential strategies and techniques. *Id.* With knowledge of this information, criminals would be able to circumvent these procedures and evade investigation. Therefore, documents with this information were properly withheld. *See Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 106, 109 (D.D.C. 2012).

The FBI invoked Exemption 7(E) to protect intra-agency email addresses, private intranet web addresses, and "a secure internal email tool." Hardy Decl. ¶ 112. The release of this information could permit suspects to circumvent the law by gaining unauthorized access to and manipulating data within the FBI's non-public intranet. *Id.* Additionally, disclosure of FBI employees' internal emails could expose them to harassing communications. *Id.* For these reasons, the FBI properly withheld records containing this information. *See Jewett v. U.S. Dep't of State*, No. 11-1852, 2013 WL 550077, at *9 (D.D.C. Feb. 14, 2013).

Next, the FBI withheld documents to protect the procedures and techniques used to collect and analyze information acquired for investigative purposes. Mr. Hardy explained that releasing this information would "disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it, once it is collected." Hardy Decl. ¶ 113. Disclosure of this information would allow those engaged in criminal activity to create countermeasures to diminish the effectiveness of the methods used and avoid detection of their illegal activities. *Id.* Therefore, the FBI correctly asserted Exemption 7(E) to withhold this information. *See Shapiro*, 78 F. Supp. 3d at 520.

The last category of records withheld under Exemption 7(E) pertains to "detailed requests, reports, notes, and/or data resulting from the FBI's analysis of computer and other digital media seized pursuant to search warrants and/or subpoenas." Hardy Decl. ¶ 114. Mr. Hardy certified that the FBI's computer analysis response team ("CART") "provides support to investigations that rely, in whole or in part, upon digital evidence, namely through the acquisition, preservation, examination processing, and presentation of stored digital information in computers or other electronic devices or media." *Id.* Mr. Hardy explained that "[p]roviding detailed information about CART software, equipment, techniques, procedures, and/or types of reports generated by CART during their forensic testing process would impede the FBI's effectiveness in investigating crimes where evidence can be found on computers and other digital media." *Id.* With knowledge of this information, criminals would have the necessary information to alter their behavior and develop technology to thwart CART in order to avoid detection of their illegal activities. *Id.* Accordingly, the FBI properly withheld this information.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. Plaintiffs' motion is denied. An appropriate Order accompanies this Opinion.


Dated: August 31, 2017


John Michael Vazquez, U.S.D.J.